Gardiner, J.
According to the facts found by the referee, all the defendants were interested in the wheat stored with *344 Wight & Co. Church & Ball, as general owners, and Dows & Guiteau, as commission merchants, with a lien for their advances and commissions. The more important question in the cause will be, whether Wight & Co., the warehouse-men, in the delivery of the property which has given rise to this controversy, acted as the agents of the defendants, or of Howes, Godfrey & Co., their vendees.
The facts are, that Dows & Guiteau, on the 2d of May, 1848, contracted to sell to Howes, Godfrey & Co. three thousand and thirty-seven thirty-eight-sixtieths bushels of Genesee wheat at $1.46 per bushel. On the eighth of that month they gave to the vendees the following order:
“Messrs. J. Wight & Co.,
“ Please deliver Messrs. Howes, Godfrey & Co. three thousand and thirty-seven thirty-eight-sixtieths bushels of Genesee wheat, from No. 12 Atlantic Dock.”
At the time of delivery of this order, Dows & Guiteau supposed that the precise quantity of Church & Ball’s wheat named in the order, was then on storage in store No. 12, above mentioned. Under this order, as the referee reports, there was delivered to the agent of the vendees, about one thousand bushels of the wheat of Church & Ball, from loft 2, of store 12, which was all that remained in the possession of the warehousemen, and the measurer was then directed by Wight to measure from loft 1, of store No. 11, at the same buildings, sufficient to fill the order. This wheat was the property of the plaintiff. Messrs. Godfrey & Co. paid Dows & Guiteau for the quantity of wheat received by them under the order, and the latter accounted with Church & Ball, their principals, before notice that the plaintiff’s wheat had been taken.
The question of agency above suggested, it seems to me, is determined by a simple statement of the facts. Dows & Guiteau had contracted to sell, and of course to deliver, a *345 quantity of wheat. This obligation they assumed to discharge by the order in question, upon their warehousemen. Wight '& Co. received the order, assumed to act under it, and consummated the contract of their principals, by the delivery of the quantity prescribed, which was accepted by the vendees in satisfaction and discharge of the engagement of the vendors. Nor is this all. The vendors subsequently recognized the acts of the warehousemen, as performed for their benefit, by receiving the stipulated price for the wheat delivered, as for property sold by them, to Howes, Grodfrey & Co., and by retaining the money after notice that the wheat taken was in fact the property of the plaintiff. It is true that the defendants supposed that all their wheat was stored in No. 12, and that the quantity there remaining was sufficient to satisfy their contract. They were mistaken, however, in both particulars. The order which they gave under a misapprehension as to the facts, was a direction to a depositary employed by them, for his government, and not for the government of the vendees. The whole duty of the latter was discharged when they delivered the writing to the warehousemen, at their place of business, and he received from them the kind and quantity of property therein specified. They were under no obligation to the defendants to ascertain whether their wheat was in one bin or another. It was the business of the vendors to deliver, and consequently to designate the property. This duty they undertook to perform by an agent. They have availed themselves of his acts to obtain the money of the vendees, and a discharge from their contract, and now seek to repudiate so much of the agency as will enable them to keep the money and defeat this action. This they cannot do. It is established law, that an innocent principal cannot take an advantage resulting from the fraud of one ostensibly acting as his agent, without rendering himself liable, civilly, to the injured party. (Olmstead v. Houghtaling, 1 Hill, 318; Irving v. Motley, 7 Bing., 543.) The case from Bingham cannot, in principle, be distinguished *346 from the present. There one Dunn had been the purchasing agent of Wellington & Co. He was also employed by the defendants to obtain security by a pledge of wool, the property of Wellington & Co. He exceeded his authority, and made a fraudulent purchase in the name of that firm, of which his principals (the defendants) were ignorant. Tin-cad, Ch. J., remarked, “ that the jury acquitted the defendants of fraud, yet they involved them in the legal consequences, as it was a fraud committed by their agent with a view to benefit them.” So here, Wight & Co. were the agents of the defendants, to make delivery of the wheat sold to Howes, Godfrey & Co. The taking of the wheat from No. 11, instead of 12, was an act done under color of their agency, with a view to benefit their principals, by enabling them to fulfill their contract. The defendants received the price of the wheat, as the pledgees did the goods in the case cited, without knowledge of the fraud, and the one retained the goods, and the others proposed to retain the money obtained by the misfeasance of their agents.
It is said, however, that the defendants are not jointly liable for money had and received since Dows & Guiteau had accounted with Church & Ball for the price of the wheat before notice of the misconduct of the warehousemen. The answe.r to this objection has already been intimated. All the defendants were interested in the sale made to Howes, Godfrey & Co., although the contract was in the names of Dows & Guiteau. The money was received on the account of all, and subsequently distributed according to their respective interests: Dows & Guiteau retaining so much as would reimburse their advances, charges and commissions; Church & Ball receiving the residue. It is enough that the defendants received the money for their joint account. The proportions to which they were, as between themselves, respectively entitled, cannot affect the rights of the plaintiff in this action.
Judgment reversed and new trial ordered.